## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 15 2019, 9:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle Sheff
Sheff Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of B.D. and K.D. (Minor Children) and<br><br>K.L-T. (Mother),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | February 15, 2019<br><br>Court of Appeals Case No. 18A-JT-2084<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marilyn A. Moores, Judge<br><br>The Honorable Larry Bradley, Magistrate<br><br>Trial Court Cause Nos. 49D09-1802-JT-137, -138 |

**Crone, Judge.**

## Case Summary

[1] K.L-T. ("Mother") appeals the trial court's order involuntarily terminating her parental rights to her minor children, B.D. and K.D. ("the Children"). She argues that the Indiana Department of Child Services ("DCS") failed to present clear and convincing evidence to support the trial court's termination of her parental rights. Concluding that DCS presented sufficient evidence, we affirm.

## Facts and Procedural History

[2] Following an evidentiary hearing on July 26, 2018, the trial court made the following relevant findings of fact:[1]

> 1. Mother is the mother of B.D. and K.D., minor children born on December 16, 2011 and January 10, 2017.
>
> ….
>
> 3. The parental rights of the children's father were involuntarily terminated on May 29, 2018.
>
> 4. Child in Need of Services Petitions "CHINS" were filed on B.D. and K.D. on January 16, 2017, after K.D. was born positive for opiates and suffered from withdrawal symptoms. Mother tested [positive] for opiates and cocaine.
>
> 5. The children were ordered detained and placed outside the home at the January 17, 2017, initial hearing.

---

[1] The trial court's order references Mother and the minor children by their full names. We use "Mother" and the Children's initials where appropriate.

6. The children were adjudicated in need of services on June 7, 2017, after a fact-finding hearing at which time Mother failed to appear.

7. Disposition was held on July 5, 2017. Mother failed to appear at the disposition.

8. The children had been removed from their mother for at least six (6) months under a dispositional decree prior to this termination action being filed on February 2, 2018.

9. Services to address issues of instability, substance abuse, and past trauma were ordered and referred.

10. Prior to April of 2018, Mother failed to engage in any service[s]. She instead avoided court and her whereabouts were, at times, unknown.

11. In March of 2017, and prior to disappearing, Mother entered Craine House as part of Community Corrections[.] She left Craine House without authority.

12. Mother has been incarcerated since January of 2018, after violating probation from a Theft conviction. Her out date is October 31, 2018.

13. Mother testified as to classes she has taken while incarcerated. These classes were ninety percent informational.
14. Alcoholics Anonymous and Narcotics Anonymous is offered weekly at the Marion County Jail. Mother has attended nine Alcoholics Anonymous sessions, the last being on May 16, 2018. She has only attended two Narcotics Anonymous sessions, the last being on May 4, 2018.

15. Although Mother testified she was studying for her GED and would test shortly, her inmate records reflect that she attended preparation sessions ten times, all being in February of

2018.

16. Therapy was referred and an intake session was performed in April of 2018 at the jail. Recommendations from the intake session included Mother undergo group and individual therapy for depression, anxiety, and past trauma, as well as complete an intensive outpatient drug treatment program.

17. Due to conditions at the jail, therapy could not be done.

18. Mother has a history of criminal activity which includes more than one theft conviction as well as a conviction for illegal substances. She also has a pattern of violating probation.

19. Mother has a history of substance abuse which includes alcohol, marijuana, cocaine, and opiates.

20. Mother was a daily heroin user, and last used in January of 2018, shortly before she became incarcerated.

21. Mother has not exercised parenting time with B.D. or K.D. since the CHINS case opened. K.D. was a few days old.

22. Since March of 2017, Mother contacted the [DCS] family case manager, once by phone and once by letter. She did not request visitation.

….

25. The children have been placed with their maternal great-aunt since their removal one and one-half years ago. This is the only home K.D. has ever known.

26. The children have been observed doing well and having a natural bond with their caretaker.

27. The children's placement is preadoptive.

28. Since Mother failed to take advantage of parenting time, it is unknown what kind of bond would remain between B.D. and her. Mother would be a stranger to K.D.

29. Due to not taking advantage of chances, the appropriateness of the children's placement, and the children's right to permanency, the family case manager believes terminating [M]other's parental rights would be in the children's best interests.

30. Given the length of time the CHINS cases have pended, the children's needs being met in their placement, and B.D.'s wishes, the Guardian ad Litem is recommending adoption as being in the best interests of the children.

Appealed Order at 1-3.

[3] Based upon these findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in the Children's removal and continued placement outside the home will not be remedied by Mother; (2) there is a reasonable probability that the continuation of the relationship between Mother and the Children poses a threat to the Children's well-being; (3) termination of the parent-child relationship between Mother and the Children is in the Children's best interests; and (4) DCS has a satisfactory plan for the care and treatment of the Children, which is adoption. Accordingly, the trial court determined that DCS had proven the allegations of the petition to terminate parental rights by clear and convincing evidence and therefore terminated Mother's parental rights. This appeal ensued.

# Discussion and Decision

"The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id*. A petition for the involuntary termination of parental rights must allege in pertinent part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove that termination is appropriate by a showing of clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144

(Ind. 2016). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

"We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

## Section 1 – Clear and convincing evidence supports the trial court's conclusion that there is a reasonable probability of unchanged conditions.

We first address the trial court's conclusion that there is a reasonable probability that the conditions that led to the Children's removal and continued

placement outside the home will not be remedied by Mother.[2] In determining whether there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, "we must ascertain what conditions led to their placement and retention in foster care." *Id*. Second, "we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id*. (quoting *In re I.A.*, 934 N.E.2d 1132, 1134 (Ind. 2010) (citing *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997))). In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231). "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke Cty. Office of Family*

---

[2] Mother also challenges the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the Children's well-being. However, Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, we will address only one of the three requirements.

*& Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[7] Here, the Children were originally removed from the home after K.D. tested positive for opiates and suffered from withdrawal symptoms. Thereafter, Mother failed to participate in the ordered services. Admittedly, she failed to participate simply because she "didn't want to participate." Tr. Vol. 2 at 17. Instead, she chose to go "on the run" to avoid arrest for her ongoing criminal behavior. Moreover, since the beginning of the CHINS proceedings, Mother never once visited with the Children or inquired about visiting with the Children. Mother chose criminal behavior and her addictions over her children.

[8] Mother blames much of her inability to make reunification efforts on her current incarceration. Moreover, she complains that the evidence presented by DCS concentrated on her past failures and did not take into account her new self-declared dedication to changing her ways. However, it was the trial court's prerogative to look to Mother's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. The trial court specifically noted that even while not incarcerated, Mother did nothing toward reunification. The court further concluded that, due to Mother's pattern of criminal activity and failure to follow probation rules, it is

reasonable to believe that Mother will not remain available as a parent even after her release. Mother essentially asks that we reweigh the evidence in her favor, and we will not. Clear and convincing evidence supports the trial court's conclusion that there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied by Mother.

## Section 2 – Clear and convincing evidence supports the trial court's conclusion that termination of Mother's parental rights is in the Children's best interests.

[9] We next address the trial court's conclusion that termination of Mother's parental rights is in the Children's best interests. In considering whether termination of parental rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the trial court must subordinate the interests of the parent to those of the child involved. *Id*. The trial court need not wait until the child is irreversibly harmed before terminating parental rights. *Id*. "The historic inability to provide adequate housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best interests." *In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). The testimony of service providers may support a finding that termination is in the child's best interests. *McBride,* 798 N.E.2d at 203.

[10] DCS family case manager Shanika Carter testified that she believed that continuation of Mother's relationship with the Children was not in their best interests. She noted that "creating a safe and stable home free from illegal activity and illegal substance abuse did not seem to be a priority" for Mother. Tr. Vol. 2 at 66-67. She opined that the Children deserve "a parent that is able to provide them with a safe and stable home … [and] [t]hey deserve the right to permanency." *Id.* at 67. She stated that the Children are happy and seem very bonded to their current preadoptive caregiver.

[11] Similarly, Ed Walker, the Children's guardian ad litem, testified that he recommended termination of Mother's parental rights. He opined that the Children needed and desired the permanency that adoption could give them. He emphasized the length of time the case had been pending, noting that K.D. had been out of Mother's care since he was only a few days old, and that six-year-old B.D. had expressed a desire to stay with his current caregiver. He stated that he did not believe that Mother should be given any additional time to complete services and that adoption by their current placement was in the Children's best interests. As our supreme court has often stated, "children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *K.T.K.*, 989 N.E.2d at 1230 (quoting *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011)). The evidence of unchanged conditions coupled with the testimony of service providers is sufficient to support the trial court's conclusion that termination of Mother's rights is in the Children's best interests.

# Section 3 – Adoption is a satisfactory plan for the care and treatment of the Children.

[12] Finally, Mother challenges the trial court's conclusion that there is a satisfactory plan for the care and treatment of the Children. While the trial court must find that there is a satisfactory plan for the care and treatment of the child, "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). Generally, adoption is a satisfactory plan. *Id.*

[13] It is clear from the record, and the trial court's findings, that the permanency plan here is for the Children to be adopted by their current caregiver, their maternal great-aunt. Thus, there is clearly a general sense of direction in which these Children will be going, and we reject Mother's insistence that DCS was required to present more detailed evidence regarding the specific living circumstances at the preadoptive home. The remainder of Mother's argument against this plan is simply a reiteration of her plea that she be given more time to engage in reunification efforts after her release from incarceration. We are not wholly unsympathetic to Mother, but we must defer to the trial court's weighing of the evidence here. Decisions to terminate parental rights "are among the most difficult our trial courts are called upon to make" and are very fact sensitive. *E.M. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 636, 640 (Ind. 2014). We will reverse a termination of parental rights only upon a showing of "clear error" – that which leaves us with a definite and firm conviction that a mistake

has been made. *In re A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997). Based on the record before us, we cannot say that the trial court's termination of Mother's parental rights to the Children was clearly erroneous. Accordingly, the trial court's termination order is affirmed.

[14] Affirmed.

Vaidik, C.J., and Mathias, J., concur.